NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EXANTUS EXAMPLAIRE, : : : Plaintiff, : vs. : : HARBOR BAR & BRASSERIE RESTAURANT, : : Defendant. : | **Hon. Dennis M. Cavanaugh** **OPINION** Civil Action No. 09-CV-2693 (DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Harbor Bar & Brasserie Restaurant ("Defendant") pursuant to Fed. R. Civ. P. 12(d) to treat the motion originally submitted as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) as a motion for summary judgment pursuant to Fed. R. Civ. P. 56. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After carefully considering the submissions of all parties, it is the decision of this Court that Defendant's motion is **granted**.

**I.    BACKGROUND**

Exantus Examplaire ("Plaintiff") proceeding *pro se* alleges that during the course of his employment at Defendant's establishment, Plaintiff was subjected "derogatory racial harassment" and a hostile work environment. Plaintiff identifies a number of coworkers, including the bartender, a cashier/kitchen aid, a bus boy and a server, as well as a supervisor uttering the epithet "Haitian F**k" when addressing Plaintiff. According to Plaintiff, the individuals accused of engaging in misconduct are "all [ ] Latinos, non-black and non-Haitian." Defendant conducted a sensitivity training seminar on the basis of what Defendant identifies as Plaintiff's uncorroborated allegations.

Plaintiff alleges that after complaining about the misconduct of his coworkers, he was initially suspended and ultimately, discharged in retaliation. Plaintiff further alleges that he was falsely accused of threatening another coworker in a meeting with the General Manager of the establishment.

Defendant alleges that Plaintiff admits to punching and jabbing coworkers in order to mete his brand of workplace justice. Further, Defendant alleges that Plaintiff physically threatened coworkers. Defendant asserts that the basis for Plaintiffs discharge was not retaliation, but intolerance for violence in the workplace.

On July 31, 2007, Plaintiff filed a complaint (EEOC Charge No. 524-200701410) with the United States Equal Employment Opportunity Commission ("EEOC") concerning allegations of harassment and discharge as a consequence of national origin, race and retaliation. Pursuant to that complaint, Plaintiff indicates that, in reaction to the epithets or other insults, he would lightly jab his coworkers. Plaintiff indicates that another coworker, Luis, reported to a supervisor that Plaintiff had hit him. Upon being confronted with this accusation, Plaintiff notified the supervisor of the alleged ongoing verbal harassment. Plaintiff further alleges that the supervisor was showing favoritism to individuals of Hispanic origin and indeed, Plaintiff asserts "[j]ust about every black or non-Hispanic person from the morning shift have either been let go or left voluntarily."

The EEOC conducted an analysis. By way of letter, dated March 30, 2009, the EEOC determined that it was "unable to conclude that the information establishes a violation of federal law on the part of Respondent." The EEOC indicated that "[t]his does not certify that Respondent is in compliance with the statutes. No finding is made as to any other issue that might have been construed as having been raised by this charge." The EEOC letter included a Notice of Dismissal

and Right to Sue.

**II.     STANDARD OF REVIEW**

    A.     Motion to Dismiss

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In Bell Atl. Corp. v. Twombly, the Supreme Court clarified the Fed. R. Civ. P. 12(b)(6) standard. See 550 U.S. 544, 555 (2007). Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." Bell, 550 U.S. at 558 (citing Conley, 355 U.S. at 45–46). Instead, the Supreme Court instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell, 550 U.S. at 555-56.

This Court is also cognizant of the leniency given to *pro se* litigants. Allegations of a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers. See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Albinson, 356 F.3d 278 (3d Cir. 2004).

    B.     Summary Judgment

Pursuant to Fed. R. Civ. P. 12(d), "[i]f, on motion under Rule 12(b)(6) [ ], matters outside

the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

"A court reviewing a summary judgment motion must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." Gaston v. U.S. Postal Serv., 2009 U.S. App. LEXIS 5673 (3d Cir. 2009). However, "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

"A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b). "[T]he burden on the moving party may be discharged by "showing" -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Cartrett, 477 U.S. 317, 325 (1986). "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c)." Celotex, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).

> When a motion for summary judgment is properly made and supported, [by contrast,] an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material

4

facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (internal citations omitted). Indeed, "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." See Schoch v. First Fid. Bancorp., 912 F.2d 654, 657 (3d Cir. 1990). Rule 56(e) permits "a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Id. (quoting Lujan v. National Wildlife Fed'n., 497 U.S. 871, 889 (1990)). "It is clear enough that unsworn statements of counsel in memoranda submitted to the court are even less effective in meeting the requirements of Rule 56(e) than are the unsupported allegations of the pleadings." Schoch, 912 F.2d at 657.

### III. DISCUSSION

Initially, Defendant moved to dismiss Plaintiff's complaint for failure to state a claim upon which relief may be granted. Upon receipt of Plaintiff's opposition, by way of reply, Defendant now moves the Court to convert the initial motion to dismiss to motion for summary judgment pursuant to Fed. R. Civ. 12(d) based on Plaintiff's presentation and incorporation of evidence outside the pleadings in support of Plaintiff's opposition to Defendant's motion to dismiss. Accordingly, this Court will address the motion to dismiss as a motion for summary judgment.

1.  Racial Discrimination and Hostile Work Environment

"Title VII of the Civil Rights Act of 1964 makes it 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" West v. Philadelphia Elec. Co., 45 F.3d 744, 753 (3d Cir. 1995) (citing 42 U.S.C.

§ 2000e-2(a)(1))[1] [2]; 42 U.S.C. § 2000, *et seq*.  "The Supreme Court has recognized that Title VII's protection is not limited to 'economic' or 'tangible' discrimination, such as the denial or loss of a job or promotion. It is violated as well by a "work environment abusive to employees because of their race, gender, religion, or national origin.'" Id. (citing Harris v. Forklift, 510 U.S. 17 (1993)). "To be cognizable within the meaning of Title VII, harassment, whether based on race or sex, must affect a 'term, condition, or privilege' of the plaintiff's employment." Id.  The United States Supreme Court has held that the harassment "must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" Id. (citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)("Title VII declares discriminatory practices based on race, gender, religion, or national origin equally unlawful.")). "To bring an actionable claim for . . . harassment because of an intimidating and offensive work environment, a plaintiff must establish 'by the totality of the circumstances, the existence of a hostile or abusive working *environment* . . . .'" Id. "We can say that whether an environment is 'hostile' or 'abusive' can be determined only by looking at the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (citing Harris, 510 U.S. at 22). In Andrews v. City of Philadelphia, the Third Circuit Court of Appeals articulated "five elements

---

[1]

"As amended by the 1991 Civil Rights Act, § 1981 now encompasses hostile work environment claims, and we apply the same standard as in a similar Title VII claim." Ocasio v. Lehigh Valley Family Health Cntr., 2004 U.S. App. LEXIS 4711, *7 (3d Cir. Feb. 9, 2004); 42 U.S.C. § 1981.

[2]

 "We have held that the elements for a hostile work environment claim under [New Jersey Law Against Discrimination] NJLAD 'closely resemble the first four elements of [a] Title VII hostile work environment claim.'" Sanchez, 2010 U.S. App. LEXIS 2014 at *6 n.2 (citing  Cardenas v. Massey, 269 F.3d 251 (3d Cir. 2001)); N.J.S.A. § 10:5-1, *et seq*.

necessary to establish a successful hostile work environment claim:"

>(1) the plaintiff suffered intentional discrimination because of his or her membership in the protected class;
>
>(2) the discrimination was pervasive and regular;
>
>(3) the discrimination detrimentally affected the plaintiff;
>
>(4) the discrimination would have detrimentally affected a reasonable person in the same protected class in that position; and,
>
>(5) the existence of respondeat superior liability.

895 F.2d 1469 (3d Cir. 1990). With respect to elements 3 and 4, the Supreme Court in Harris has stated, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive--is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." Id. at 753-54 (citing Harris, 510 U.S. at 20). "Title VII is not violated by "[m]ere utterance of an . . . epithet which engenders offensive feelings in an employee" or by mere "discourtesy or rudeness," unless so severe or pervasive as to constitute an objective change in the conditions of employment." Sanchez v. SunGuard Availability Services, 2010 U.S. App. LEXIS 2014, *7 (3d Cir. Jan. 26, 2010).

With respect to the final factor, on the one hand, "[a]n employer will be liable for the harassing conduct of the alleged victim's coworker if the employer was 'negligent or reckless in failing to train, discipline, fire or take remedial action upon notice of harassment.'" Andreoli v. Gates,

482 F.3d 641, 644 (3d Cir. 2007) (citing Bonenberger v. Plymouth Twp., 132 F.3d 20, 26 (3d Cir. 1997) (internal citations omitted)). "An employer is negligent if it 'knew or should have known about the harassment, but failed to take prompt and adequate remedial action.'" Id. (citing Jensen v. Potter, 435 F.3d 444, 453 (3d Cir. 2006)). "Even if the remedial action does not stop the alleged harassment, it is 'adequate' if it is 'reasonably calculated' to end the harassment." Id. (quoting Knabe v. Boury Corp., 114 F.3d 407, 412-13 (3d Cir. 1997)). Generally, the adequacy of an employer's response is dictated by the immediacy with which the apparent harassment or a charge of harassment is addressed. Id.

On the other hand, "[w]here the alleged perpetrator of the harassment is a supervisory employee," . . . "an employer is, as a general rule, 'subject to vicarious liability to a victimized employee for an actionable hostile work environment created by a supervisor with immediate (or successively higher authority over the employee.'" Hargrave v. County of Atlantic, 262 F. Supp. 2d 393, 429 (D.N.J. 2003) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998)). "An employer may, under certain circumstances, raise an affirmative defense that limits its liability by proving, by a preponderance of the evidence, that it 'exercised reasonable care to prevent and correct promptly any sexually [or racially] harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.'" Id. (quoting Faragher, 524 U.S. at 807). "This affirmative defense is unavailable, however, in cases where 'the supervisor's harassment culminates in a tangible employment action.'" Id. (citing Faragher, 524 U.S. at 807). "Examples of tangible employment actions include employment-related actions such as 'discharge, demotion, or undesirable reassignment.'" Id. (citing Burlington Indus. Inc. v. Ellert, 524 U.S. 742, 765 (1998)).

8

Plaintiff alleges that the name calling was pervasive in that not only his coworkers, but also a patron in the restaurant uttered the insult. Additionally, Plaintiff asserts that the name calling induced stress and was sickening, therefore, Plaintiff was detrimentally affected by the offensive words. Moreover, Plaintiff contends that a fellow Haitian in Plaintiff's position would feel the same way. Finally, Plaintiff argues that management was directly responsible for the lies that led to Plaintiff's discharge, namely Plaintiff's alleged violent behavior. Defendant disputes that the epithet is more than an offensive utterance and indicates that a racial sensitivity training seminar was conducted in response to Plaintiff's uncorroborated allegations.

While the epithet "Haitian F**k" is indeed unpalatable, in the instant matter, it appears to be nothing more than an offensive utterance. Although Plaintiff's complaint indicates that the offensive utterance occurred on numerous occasions, the incidents seem to have been isolated, rather than pervasive and regular. The Court does not condone the type of misconduct recited by Plaintiff, however, there is no indication that Plaintiff was physically threatened or physically harmed.. To the contrary, by Plaintiff's own account, it appears that any physical violence or threat was instituted by Plaintiff in response to the alleged name calling. Plaintiff's Exhibit ("Pl. Ex.") B[3], D[4] [5]. Indeed, it

---

[3] "Harbor Bar and Brasserie is misinterpreting my statements. I never admitted to poking or kicking my co-workers as they claim. Any reference by me to hitting can be understood from my complaint letter to Axel Rudolph (Exhibit A) as a mild attempt by me to acknowledge the verbal abuse and to discourage the revilers."

[4] "A few minutes after Miguel called me an Ape: Arty came by and told me that he needed to speak with me later about my punching Miguel. I replied that I don't like being called, 'Haitian F**k' and if anyone calls me, 'Haitian F**k' to my face, they are going to get hit."

[5] "I should be angrier at my co-workers for calling me, 'Haitian F**k'; but not wanting to cause a scene, all I do is lightly jab them on the backside. If they were my friends or just horsing around, they would not go running off to the authorities in an effort to get me in trouble."

seems that to the extent a court could conclude that a hostile work environment exists, inasmuch as Plaintiff claims to be a victim, Plaintiff is equally a perpetrator of the hostile work conditions.

Plaintiff alleges that an issue of fact arises with respect to what Plaintiff purports to be an inadequate grievance procedure and/or insufficient remedial measure taken in response to Plaintiff's complaint. Notably, Plaintiff only availed himself of the internal grievance procedure upon being confronted by a supervisor for punching or hitting a coworker[6]. Therefore, despite any alleged compliance with the internal grievance procedure, Plaintiff's concessions concerning Plaintiff's immediate and violent response to the situation effectively negates or, at least, reduces the validity Plaintiff's alleged compliance. Moreover, although Plaintiff contends that the remedial action taken by Defendant in response to Plaintiff's complaint, namely the racial sensitivity training seminar, was inadequate, Plaintiff does not dispute that this measure was taken. Regardless of alleged inadequacy or insufficiency, there is no dispute that a grievance procedure existed, whether formal or informal, permitting Plaintiff to assert a complaint against his coworkers and remedial action was instituted in response. Even viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact. Defendant's motion for summary judgment is **granted**.

    2.   Retaliatory Discharge

"In order to prevail on a claim for retaliation under Title VII, an employee must prove that (1) she engaged in a protected employment activity, (2) her employer took an adverse employment action after or contemporaneous with the protected activity, and (3) a "causal link" exists between the

---

[6] "Yet although plaintiff had legitimate reason to complain, out of fear of being rebuffed, he did not. He would utter his legitimate complaint when confronted by management." Plaintiff's Brief at 7.

adverse action and the protected activity." [7] Id. (citing Weston v. Pennsylvania, 251 F.3d 420, 430 (3d Cir. 2001)). "[T]emporal proximity between the protected activity and the termination is sufficient to establish a causal link." Woodson v. Scott Paper Co., 109 F.3d 913, 921 (3d Cir.1997). In the instant matter, Plaintiff engaged in protected activity by reporting the alleged harassment to Plaintiff's supervisor. Subsequently, Plaintiff was subject to an adverse employment action, discharge. Finally, the timing between the reported allegations and the discharge is sufficiently close to establish a causal link. Therefore, Plaintiff has successfully established a prima facie case of retaliation.

If Plaintiff successfully establishes a prima facie case, then "the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action." Moss v. Potter, 2006 U.S. App. LEXIS 9601, *4 (3d Cir. 2006) (citing McDonnell Douglass Corp. v. Green, 411 U.S. 792, 802-03 (1973)). Defendant advances Plaintiff's violence in the workplace and threats of violence to coworkers as a legitimate, non-retaliatory basis for discharge. The Court agrees.

Lastly, "[i]f the employer advances such a position, the burden shifts back to the employee to prove that the non-discriminatory explanation is merely a pretext for discrimination." Id. (citing McDonnell, 411 U.S. at 804). By way of response, Plaintiff alleges that Defendant uses the statements in Plaintiff's letter as a pretext for discharge and all of the acts contained therein occurred prior to August 20, 2007. Plaintiff does not deny violence towards coworkers. By contrast, Plaintiff's account of the events culminating in Plaintiff's discharge memorializes Plaintiff's physically violent behavior and threats of violence towards coworkers. In light of Plaintiff's admission concerning his

---

[7] The same standard applies with respect to Plaintiff's retaliatory discharge claim pursuant to NJLAD. See Sanchez, 2010 U.S. App. LEXIS 2014 at *9 (citing Moore v. City of Philadelphia, 461 F.3d 331, 340-341 (3d Cir. 2006).

violent tendencies towards coworkers, Plaintiff cannot dispose of Defendant's non-discriminatory explanation as a mere pretext for discharge.  Violence in the workplace is not condoned and serves as a legitimate basis for discharge.  Therefore, the Court finds that there is no genuine issue of material fact present and concludes that Defendant's motion for summary judgment is **granted**.

**IV.    CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment pursuant Fed. R. Civ. P. 56 is **granted**.

                                               S/ Dennis M. Cavanaugh
                                               Dennis M. Cavanaugh, U.S.D.J.

Dated:          February  25 , 2010
Original:       Clerk
cc:             All Counsel of Record
                Hon. Mark Falk, U.S.M.J.
                File